IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW HOWELL and ALISHA BROWN, ) ) ) | |
| Plaintiffs ) ) | NO. 3-15-cv-1428 JUDGE TRAUGER |
| v. ) ) | |
| JUSTIN MCCORMICK, et al., ) ) | |
| Defendants ) | |

**MEMORANDUM**

Pending before the court are three Motions for Judgment on the Pleadings, filed by Defendants McCormick, Jensen, Massey, Lopez-Aldea and Polk (with Defendant Vaughn, "the Officers") (Docket No. 145); by the Defendant Metropolitan Government of Nashville and Davidson County ("Metro") (Docket No. 146); and by Defendant Joshua Vaughn (Docket No. 149).

For the reasons stated herein, the Motions for Judgment on the Pleadings will be denied.

FACTUAL ALLEGATIONS

Plaintiffs Matthew Howell and Alisha Brown brought this action pursuant to 28 U.S.C. § 1983, alleging violations of their Fourth Amendment rights, violation of Howell's Fifth Amendment rights, and the state law claims of conversion, trespass, battery and false arrest (Docket No. 72). In their Amended Complaint, Plaintiffs make the following allegations, all of which must be accepted as true for purposes of these motions.

On the night of December 8, 2014, Defendant Leila Avila, once a tenant who lived with the Plaintiffs in a home co-owned by Howell and Brown, broke into Plaintiffs' home, under the influence of an intoxicant and accompanied by an unknown male accomplice, and attempted to steal various items, including Plaintiff Howell's car. Once Howell convinced Avila and her accomplice to leave the premises, Avila called 911 and falsely accused Howell of pointing a gun at her. Avila told the

911 operator that she owned the car in Howell's garage and that Howell would not let her have it. Avila also told the 911 operator the following: (1) that she could not prove her ownership of the car; (2) that she was never in any danger; (3) that she did not think Howell's gun was loaded; (4) that she had already left Howell's property; (5) that Howell was not going to shoot at police; and (6) that she was safe.

The Defendant Officers arrived at Plaintiffs' home in the early morning hours and found Defendant Avila outside the house and off the property, well away from any possible danger. They approached the house, some with guns drawn, and summoned Howell to the front door. They had no warrant to arrest or to search. Howell denied any wrongdoing and informed the Officers that Avila had broken into his home. Plaintiff Alisha Brown, an officer with the Tennessee Department of Corrections ("TDOC"), was behind Howell at the door, in full view of the Officers and wearing a TDOC uniform.

When asked about weapons, Howell, a former Marine, responded that he had multiple guns in the home but none on his person and pulled his shirt up to reinforce that assertion. The Officers could see that Howell was not intoxicated or enraged. Howell declined the Officers' request to come outside, stating that if he stepped outside, he would be "surrendering his constitutional rights." Because Howell was not successful in convincing the Officers that he, in fact, was the victim, he asked the Officers to speak to his lawyer and handed them his lawyer's business card. At that point, Officers McCormick, Lopez-Aldea and Vaughn stormed into Plaintiffs' house, seized Howell by force without probable cause, threw him against the wall (injuring his shoulder), and handcuffed him. After handcuffing him, the Officers placed Howell in the squad car, and McCormick and Polk interrogated him further about the alleged aggravated assault of Avila.

Next, the Officers went back into Plaintiffs' home, without consent, seized Brown, and handcuffed her. Plaintiffs allege that Officers McCormick, Vaughn and Polk detained Brown without probable cause because she refused to make accusations against Howell and to use her to coerce Howell into cooperating with their interrogation. Once both Plaintiffs were handcuffed and detained by the other officers, Officers Massey and Jensen assisted Defendant Avila in "stealing" various goods from the house and also in stealing the car in Plaintiffs' garage. Plaintiffs have never received their car or the stolen goods back.

Defendant McCormick brought the baseless charges of resisting arrest and aggravated assault against Howell, charges which resulted in the "continued seizure" of Howell. A jury acquitted Howell of both of the charges on February 24, 2016.

## MOTIONS FOR JUDGMENT ON THE PLEADINGS

The Federal Rules of Civil Procedure provide that, after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard of review applicable to motions for judgment on the pleadings is the same as that applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6), both of which require the court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief. *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 608 (6th Cir. 2014).

## CONSTITUTIONAL CLAIMS

Federal law provides a private right of action against anyone who subjects any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights or privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. The person

suing under this statute must demonstrate the denial of a constitutional right caused by a defendant acting under color of state law. *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014).

FOURTH AMENDMENT

The Fourth Amendment provides that the right of the people to be secure in their houses against unreasonable searches and seizures shall not be violated. U.S. Const. amend. IV. The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. *Causey v. City of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006).

Plaintiffs allege that Officers McCormick, Lopez-Aldea, Vaughn and Polk[1] violated their Fourth Amendment rights to be free from unreasonable searches and seizures by invading Plaintiffs' home without a warrant, by arresting Howell without a warrant, and by detaining Brown without a warrant. Plaintiffs also contend that the Officers violated their Fourth Amendment rights by stealing ("seizing") their car and other goods, after physically disabling both Howell and Brown. The Officers argue that, under the particular circumstances of this case and based upon what the Officers knew at the time, exigent circumstances authorized their warrantless seizures of Howell and Brown and their entry into the home, so no Fourth Amendment violation occurred.[2]

Because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions. *Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006). A warrant is not required to enter a person's home when the exigencies of the situation make the needs of law enforcement so compelling that the warrantless entry is objectively reasonable under the Fourth Amendment. *Id.*; *Nelms v. Wellington Way Apartments, LLC*, 513 Fed. App'x 541, 545 (6th Cir.

---

[1] This claim is not asserted against Officers Massey or Jensen.

[2] It is not clear that the Officers are arguing exigent circumstances concerning the seizure of Plaintiffs' car and other goods. As explained below, the court finds no exigent circumstances existed that would justify seizure of this personal property.

4

2013). The Sixth Circuit has traditionally found the existence of exigent circumstances when (1) the officers were in hot pursuit of a fleeing suspect; (2) the suspect represented an immediate threat to the arresting officers and public; and (3) immediate police action was necessary to prevent the destruction of vital evidence or to thwart the escape of known criminals. *Causey*, 442 F.3d at 529.

Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry. *Osborne v. Harris County, Texas*, 97 F. Supp. 3d 911, 924 (S.D. Tex. 2015). An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, so long as the circumstances, viewed objectively, justify the action. *Id*. Exigent circumstances are situations where real, immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant. *United States v. Phillips*, 931 F. Supp. 2d 783, 793 (E.D. Mich. 2013).

One of the exigent circumstances articulated by the Supreme Court is a risk of danger to the police or others. *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (citing *Brigham City*, 126 S. Ct. at 1947). In *Brigham City*, the Court held that police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury. *Brigham City*, 126 S. Ct. at 1944. In that case, officers were called, at 3:00 a.m., to investigate a loud party. As they approached, they could hear an altercation, some kind of fight, occurring within. They heard thumping and crashing and people yelling, "stop, stop" and "get off me." From the back of the house, they saw that a fracas was taking place in the kitchen and that a juvenile was being held back by several adults. The officers saw that, when the juvenile broke free, he hit one of the adults in the face, sending the adult to the sink spitting blood. *Id*. at 1949. The Court found that, in these circumstances, the officers had an objectively reasonable basis

5

for believing that the injured adult might need help and that the violence in the kitchen was just beginning. *Id*.

The Sixth Circuit has held that the presence of a weapon creates an exigent circumstance, provided the Officers possessed information that the subject was armed and likely to use a weapon or become violent. *United States v. Phillips*, 931 F. Supp.2d at 792 (citing *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996)). However, evidence that firearms are within a residence, by itself, is not sufficient to create an exigent circumstance. *Id*. In *Phillips*, there were reports of gunshots fired, and the officers suspected firearms might be in the residence. The defendant was outside and unarmed, however, at the time the officers were attempting to search the residence. The court found there were no exigent circumstances justifying a warrantless search. *Id*.

Here, the dispatch recording[3] (Audio CD manually filed with Docket No. 50) indicates that the Officers were told the following: there was a "41-related" (domestic disturbance) reported at 1236 Canyon Ridge; the caller said that her "roommate," Matt Howell, had pointed a gun at her; it was unknown whether the gun was loaded; Howell was reported to be intoxicated; the caller (Ms. Avila) was outside the house, standing in the street, at 1220 Canyon Ridge; there was no history of strangulation; and another female was sleeping in the bedroom at the house.

The Officers argue that they reasonably believed that exigent circumstances existed. The Officers contend that they knew they were responding to a domestic disturbance, a risky situation, with a report of an assault by an intoxicated man with a gun. The Officers assert that they could legally

---

[3] Plaintiffs and Defendant Vaughn refer to a different dispatch recording that apparently reflects what Ms. Avila told the 911 dispatcher, citing Track 1 of that recording. The only CD recording filed with the court (Docket No. 50) is the recording of what the dispatcher told the Officers and has no Track 1. The court must accept the allegations of the Amended Complaint with regard to Avila's call as true for purposes of this motion, but what the Officers knew (not what the dispatcher knew) is the relevant question. *See King v. Harwood*, 852 F.3d 568, 582 (6th Cir. 2017)

seize the individual (Howell) who was blocking the Officer's entry to the house and search the premises to ensure that there was no other assailant or victim. The Officers also point to Howell's statement that he had multiple guns in the house.

Plaintiffs, on the other hand, argue that, when the Officers arrived, the caller (Avila) was away from the house, not even on the property. Plaintiffs contend that Howell was standing right inside his front door, where the Officers could see him, and Brown was standing right behind him. Howell alleges that he told the Officers he did own guns, but he also told and showed them that he was not carrying a gun at that time. Plaintiffs assert that the Officers could see that Howell was neither drunk nor enraged. There was no evidence of violence, no evidence of injury to anyone, and no evidence that Howell was unstable. Neither Howell nor Brown retreated into the house.

Plaintiffs claim that the Officers did not treat Howell as a dangerous threat until he invoked his right to remain silent and told them to speak to his lawyer. Plaintiffs contend that, at the time the Officers seized Howell and entered the house, they had not even interviewed the 911 caller (Avila) to determine what her complaint actually was or to consider the veracity of the information they had received.

Howell

(A) Seizure

With regard to the seizure of Howell, the facts that support a finding of exigent circumstances include: Howell refused to come outside; Howell admitted he had multiple guns in the house; the information the Officers received was that Howell was intoxicated and had pointed a gun at Ms. Avila; and the Officers had been told that there was another person (female) sleeping in the house. On the other hand, the facts that support a finding of no exigent circumstances include: there was no evidence of violence; Howell demonstrated that he was unarmed; there was no tumultuous or loud

situation in the house; Brown was standing right behind Howell; there was no sign that violence had recently occurred or was about to take place; there was no evidence of personal injury; and there was no evidence that anyone was intoxicated or in a rage. In addition, the complainant, Avila, was outside the house and safely away from the property.

The court finds that there were no exigent circumstances justifying the Officers' seizure of Howell in this case. There was no evidence that real, immediate and serious consequences would occur if the Officers postponed action to obtain a warrant. There was no reasonable basis to believe that an occupant of the house had been seriously injured or imminently threatened with such injury. Avila was away from the house, and Brown was standing in plain sight before them. Defendants' motion on this issue will be denied.

(B) Malicious Prosecution

In Count III, Plaintiffs allege that Officer McCormick "seized" Howell without probable cause by prosecuting him for resisting arrest and for aggravated assault. The Sixth Circuit Court of Appeals recognizes a separate constitutional claim of malicious prosecution under the Fourth Amendment that encompasses wrongful investigation, prosecution, conviction and incarceration. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). To succeed on such a claim, Howell must establish that (1) a criminal prosecution was initiated against him and that McCormick[4] made, influenced or participated in the prosecution decision;[5] (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, Howell suffered a deprivation of liberty apart from the initial seizure; and

---

[4] This claim is not made against Officers Lopez-Aldea, Vaughn, Massey, Jensen or Polk.

[5] To be liable for participating in the decision to prosecute, the officer must have participated in a way that aids in the decision, as opposed to passively or neutrally participating. *Miller v. Maddox*, 866 F.3d 389, 390 (6th Cir. 2017).

(4) the criminal proceeding ended in Howell's favor. *Miller v. Maddox,* 866 F.3d 386, 389 (6th Cir. 2017).

Plaintiffs aver that McCormick intentionally lied to the judicial magistrate by saying that Howell tried to hold Avila hostage and resisted arrest; by pretending that Howell had confessed to wielding a weapon; and by stating that Howell had acknowledged Avila's right to be on the property. There are factual disputes as to what Howell actually did, whether McCormick lied, and whether there was probable cause to arrest and prosecute him.

McCormick argues, however, that Howell suffered no seizure apart from his initial arrest. He relies upon an unpublished opinion of the Sixth Circuit holding that an initial arrest alone is an insufficient deprivation of liberty for purposes of the third element above. *Noonan v. County of Oakland*, 683 Fed. App'x 455, 463 (6th Cir. 2017). In that case, Noonan was called in twice for questioning after his initial arrest, had to undergo a polygraph test, had to hire a criminal defense attorney, had to attend a status conference in court, and his car was withheld for five months. *Id*. at 462. Yet the court held that Noonan did not suffer a deprivation of liberty as understood in our Fourth Amendment jurisprudence. *Id*. at 463.

However, the persuasive force of *Noonan*, rendered in March 2017, is entirely undermined by a reported Sixth Circuit decision rendered several months later. In *Miller*, the plaintiff was detained for about 45 minutes, and she was required to participate in a pretrial release program. *Miller*, 866 F.3d at 393. The court held that her participation in the pretrial release program constituted a deprivation of liberty separate from the initial arrest. *Id*. The court noted that it had previously held that imposing restrictions designed to compel court appearances, such as obligations to post bond, attend court hearings, and contact pretrial services could constitute a seizure. *Id*. (citing *Johnson v. City of Cincinnati*, 310 F.3d 484, 492 (6th Cir. 2002)).

9

The Amended Complaint alleges that, because of the malicious prosecutions in this case, "Mr. Howell was jailed."[6] Howell has asserted that his bond was revoked, so it is clear that he was required to get a bond. Howell has also asserted that he was acquitted of both charges by a jury, so he was required to attend a trial and most likely was required to get a criminal defense attorney. These requirements are sufficient, under these circumstances, to allege a deprivation of liberty other than the initial seizure for purposes of the malicious prosecution claim, and Defendants' motions on the malicious prosecution claim will be denied.

Brown

Plaintiffs contend that Officers McCormick, Vaughn and Polk seized Brown and handcuffed her without probable cause. There are no facts alleged to support a claim that Brown was a threat to anyone or that she was in immediate need of aid. When the Officers arrived, there was no evidence that Brown had pointed a gun at anyone, was intoxicated or was enraged. Plaintiffs allege that Brown was standing behind Howell, in plain view of the Officers, and they could see that she was not injured. The court finds that there were no exigent circumstances justifying the seizure of Brown, and Defendants' motions[7] on this issue will be denied.

Seizure of Property

---

[6] Plaintiffs assert, in response to Defendants' Motion, that Defendant McCormick's malicious prosecution also resulted in Howell's serving "about three days in jail" because Howell's bond was temporarily revoked. This allegation is not in the pleadings, so it cannot be considered by the court. Moreover, there is no allegation that revocation of Howell's bond had anything whatsoever to do with McCormick.

[7] This claim is not asserted against Defendants Massey or Jensen.

With regard to the seizure of personal goods and the car, the court also finds no exigent circumstances.[8] There was no imminent threat that the Plaintiffs were going to destroy or escape with the personal goods or the car before the Officers could obtain a warrant. Officers could have remained at the scene until a warrant could be obtained and ownership of the property determined. The court finds that there were no exigent circumstances justifying the seizure of the personal property and the car without a warrant.

This claim is brought against all of the Officers, but McCormick, Lopez-Aldea and Vaughn argue that the facts alleged state that only Massey and Jensen assisted Avila in removing this property. The Amended Complaint also alleges, however, that <u>all</u> of the Officers either physically seized the car or physically disabled the home occupants so as to enable seizure of the car. For purposes of the pending motions, these allegations are sufficient to state a claim that all of the Officers unconstitutionally "seized" Plaintiffs' property, and Defendants' motions on this claim will be denied.

<u>Conclusion</u>

Accordingly, Plaintiffs have sufficiently alleged their Fourth Amendment claims, and Defendants' Motions for Judgment on the Pleadings on these claims will be denied.

FIFTH AMENDMENT

The Fifth Amendment provides that an individual may not be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V. In order to safeguard that right, law enforcement officers must inform a suspect of his rights under the Fifth Amendment - including his right to remain silent in response to officers' questions and his right to the presence of an attorney - before conducting

---

[8] Defendants' arguments about due process requirements are irrelevant to this claim, as Plaintiffs have not brought a due process claim.

a custodial interrogation. *Johnson v. Westbrooks*, 2016 WL 6998679 at * 13 (M.D. Tenn. Nov. 30, 2016) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

Plaintiff Howell alleges that Officers McCormick, Lopez-Aldea, Vaughn and Polk[9] retaliated against him for invoking his right to remain silent. Howell asserts that, by physically assaulting him and then interrogating him after he invoked his *Miranda* rights, the Officers compelled him to be a witness against himself in violation of the Fifth Amendment.

Defendant Vaughn is the only individual Officer who addresses this Fifth Amendment claim. Vaughn argues that he did not carry out the investigation of Howell or force him to be a witness against himself. The Amended Complaint, however, alleges that the Officers, including Vaughn, retaliated against Howell for invoking his right to remain silent by attacking him and physically assaulting him. The court must accept those allegations as true at this stage of the litigation.

Accordingly, Plaintiffs have sufficiently alleged that all of the Officers violated Howell's Fifth Amendment rights. To the extent that the Officers ask the court to dismiss this claim, their motions will be denied.

## QUALIFIED IMMUNITY

The Officers argue that, even if they violated Plaintiffs' constitutional rights, they are entitled to the qualified immunity defense. Qualified immunity attaches when a government official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). Determinations of qualified immunity require the court to answer two questions: (1) whether the officer violated a constitutional right, and

---

[9] This claim is not brought against the Metro Government or Officers Massey or Jensen.

(2) whether that right was clearly established in light of the specific context of the case. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011).[10]

The law does not require a case directly on point for a right to be "clearly established," but existing precedent must have placed the statutory or constitutional question beyond debate. *White*, 137 S. Ct. at 551. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law. *Id*. Throughout the qualified immunity analysis, the dispositive inquiry remains whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 993 (6th Cir. 2017); *Williams v. Schismenos*, 2017 WL 2797429 at * 7 (N.D. Ohio June 28, 2017).

Because the Officers raise the defense of qualified immunity, the court considers only the facts that were knowable to the Officers at the time. *White*, 137 S. Ct. at 550; *King v. Harwood*, 852 F.3d 568, 582 (6th Cir. 2017). The court must judge the reasonableness of the Officers' actions from the perspective, and with the knowledge, of the Officers. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). Here, the Officers were acting based on the information they were given by the dispatcher. As indicated above, that information was that there was an intoxicated man with a gun, in a domestic dispute with a roommate, and another female was in the house sleeping. When asked, Howell told the Officers that he had multiple guns in the house but demonstrated to them that he was not armed. Then Howell refused to come outside and invoked his right to remain silent.

Although it is clearly established that a person has a constitutional right to be free from unreasonable seizures, that general proposition is of little help in determining whether the violative nature of particular conduct is clearly established. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011).

---

[10] These questions may be answered in either order, and if either one is answered in the negative, then qualified immunity protects the officer from civil damages. *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015).

13

Here, under the specific circumstances explained above (no exigent circumstances justifying the seizures of Howell, Brown and their property; no probable cause for the criminal prosecution of Howell; and retaliation for exercise of Fifth Amendment rights), Defendants' alleged misconduct did violate clearly established Fourth and Fifth Amendment constitutional rights of which a reasonable person would have known. Therefore, the Officers are not entitled to qualified immunity from Plaintiffs' constitutional claims.

METRO GOVERNMENT

To establish municipal liability under Section 1983, a plaintiff must establish that the plaintiff's harm was caused by a constitutional violation and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an implementation of the municipality's official policies or established customs. *Id.*[11]

A systematic failure to train police officers adequately is a custom or policy that can lead to municipal liability. *Miller*, 606 F.3d at 255. The inadequacy of police training only serves as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Id*. To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Id*.

---

[11] There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations. *Spears*, 589 F.3d at 256.

Plaintiffs contend that the Metro Government is responsible for the Fourth Amendment violations by the Officers because Metro has a policy of sending numerous armed men to confront homeowners at their front doors, without a warrant, in the middle of the night. In addition, Plaintiffs allege that Metro fails generally to train and supervise its officers and actually encourages violations of constitutional rights.

With regard to alleged constitutional violations found to be sufficiently alleged against the Officers, the court must determine whether Plaintiffs have adequately alleged that those violations were a result of a custom or policy of Metro, and the court finds that they have. For example, Plaintiffs allege that Metro routinely implements a policy of sending numerous armed men to confront homeowners at their front doors, without a warrant, in the middle of the night, and Plaintiffs give examples of this conduct other than this case. If true, this allegation could state a plausible claim for municipal liability. In addition, Plaintiffs allege that Metro officers are trained that no exigent circumstances are necessary to enter a home, even without a warrant, so long as an officer has probable cause. Plaintiffs also contend that Metro Police supervisors routinely fail to punish officers who violate the rights of citizens and fail to install dashboard video cameras or to audio-record on-the-scene interviews, and Plaintiffs again give examples of this conduct.

Plaintiffs have sufficiently alleged constitutional claims against Metro. Metro's arguments may be more properly addressed on summary judgment. Accordingly, Metro's Motion for Judgment on the Pleadings will be denied.

## STATE LAW CLAIMS

### Conversion

Under Tennessee law, conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's right. *Wright v. Linebarger Googan Blair & Sampson*,

782 F.Supp.2d 593, 613 (W.D. Tenn. 2011). In order to establish conversion, Plaintiffs must show that the Defendants had an intent to exercise dominion and control over the property that is in fact inconsistent with Plaintiffs' rights, and did so. *Kinnard v. Shoney's, Inc.*, 100 F.Supp.2d 781, 797-98 (M.D. Tenn. 2000).

Count V of the Amended Complaint alleges that the Officers and Ms. Avila[12] tortiously converted Plaintiffs' car and other personal property. The Officers argue, however, that the Amended Complaint alleges that only Officers Massey and Jensen assisted Avila in "stealing" goods from the house and the car from the garage. As stated above, the other Officers were restraining the home occupants (Brown and Howell) while Avila was assisted in taking the car and other property. In other words, the other Officers "aided and abetted" the conversion.

The common law civil liability theory of aiding and abetting requires that the defendant knew that his companions' conduct constituted a breach of a duty and that he gave substantial assistance or encouragement to them in their acts. *PNC Multifamily Capital Institutional Fund XXVI Limited P'Ship v. Bluff City Community Development Corp.*, 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012). As stated in the Restatement of Torts § 876 (1934 & 2004 Supp.), quoted in *PNC*, for harm resulting to a third person from the tortious conduct of another, a person is liable if he, among other things, gives substantial assistance to the other in accomplishing a tortious result. *Id*. In appropriate circumstances, joint and several liability is appropriate for conversion claims. *Id*. at 557.

Plaintiffs have sufficiently alleged their conversion claim, and Defendants' motions with regard to Plaintiffs' conversion claims will be denied.

Trespass

---

[12] This claim is not brought against Metro.

Count VI of the Amended Complaint alleges that the Officers and Avila,[13] by breaking into Plaintiffs' home without lawful authority, trespassed upon Plaintiffs' real property, in violation of Tennessee law. The Officers argue that they had justifiable cause to enter the property because of exigent circumstances. For the reasons stated above, there were no exigent circumstances justifying the Officers' trespass onto Plaintiffs' property. Therefore, Plaintiffs have sufficiently alleged a claim for trespass.

Battery

Count VII of the Amended Complaint alleges that Defendants McCormick, Lopez-Aldea, Vaughn and Polk committed battery on both Plaintiffs by physically grabbing and molesting them, in violation of Tennessee law.[14] With no citation to authority, the Officers contend that Howell consented to and invited the touching by the Officers by assaulting the victim. Viewing the Amended Complaint in the light most favorable to the Plaintiffs, there is no allegation or admission that Howell consented to and invited touching by the Officers. Indeed, the touching is one of the acts about which Plaintiffs complain.

Plaintiffs' allegations as to this claim are sufficient, and Defendants' motions on this issue will be denied.

False Arrest

---

[13] This claim is not brought against Metro.

[14] This claim is not brought against Metro or Officers Massey or Jensen.

Plaintiffs assert that Officers McCormick, Lopez-Aldea, Vaughn and Polk,[15] by unlawfully restraining and handcuffing Howell and Brown without probable cause, committed false arrest in violation of Tennessee law. Defendants argue that Plaintiffs must prove that Defendants acted without probable cause, which is correct.[16] But Plaintiffs are not required to prove their claims at this stage of the litigation.

Plaintiffs have sufficiently alleged that they were falsely arrested without probable cause, and Defendants' motions on the false arrest claims will be denied.

## CONCLUSION

For these reasons, the three Motions for Judgment on the Pleadings (Docket Nos. 145, 146 and 149) will be denied. An appropriate Order will be entered.

ENTER this 13th day of December 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE

---

[15] This claim is not alleged against Metro or Defendants Massey or Jensen.

[16] It is also true, as the Officers contend, that the existence of probable cause should be determined based on the totality of the circumstances, but the totality of the circumstances here cannot be discerned on a Motion for Judgment on the Pleadings.